## ATLANTIC COAST LINE RAILROAD CO. *v.* PHILLIPS, STATE REVENUE COMMISSIONER.

No. 385.   Argued April 9, 1947.—Decided June 23, 1947.

*Carl H. Davis* and *T. M. Cunningham* argued the cause for appellant.   With them on the brief was *Philip H. Alston.*

*Victor Davidson* and *Claud Shaw,* Assistant Attorneys General of Georgia, argued the cause for appellee.   With them on the brief were *Eugene Cook,* Attorney General, and *C. E. Gregory, Jr.,* Assistant Attorney General.

Mr. Justice Frankfurter delivered the opinion of the Court.

This was a proceeding in the courts of Georgia to declare invalid an assessment by the State Revenue Commissioner against the Atlantic Coast Line Railroad Company on the ground that the tax as applied to the appellant impairs the obligation of contracts. United States Constitution, Art. I, Sec. 10.

To encourage railroad development, the State of Georgia in 1833 chartered the Georgia Railroad Company (which later became the Georgia Railroad and Banking Company), and gave the railroad certain immunity from taxation. Georgia's increasing need of tapping new sources of revenue has not unnaturally brought to the courts the scope of this immunity. Its construction in relation to the claim of Georgia, that despite the charter of 1833 the appellant is subject to its corporate income tax, is the sole issue before us.

The case is this. Georgia, in 1937, imposed a tax of 5½ per cent. on the net income of all domestic and foreign corporations. Acts 1931, Extra. Sess. pp. 24, 26, amended, Acts 1937, pp. 109, 117; Ga. Ann. Code § 92–3102. No claim under this corporate income tax was made against the Atlantic Coast Line, one of the lessees of the Georgia Railroad, until 1941. For the calendar years 1941, 1942, 1943, the State Revenue Commissioner assessed against the appellant deficiency taxes on the basis of its net income from the road, computed at the 5½ per cent. rate paid by all corporations. It is this assessment that is contested. The appellant resisted on the ground that the attempt of Georgia to impose this tax is in disregard of the obligation assumed by Georgia through § 15 of the Charter of 1833. The Supreme Court of Georgia sustained the assessment, holding that the tax exemption of the charter related merely to the limits to which a tax on the railroad property could be levied, such a property

tax to be measured so as not to exceed one-half per cent. of the net earning power of the properties. 200 Ga. 856, 38 S. E. 2d 774. The exemption, so the State Supreme Court found, was not concerned with what we now know as a corporate net income tax and therefore did not bargain away the power of the legislature to impose such a tax.

A claim that a State statute impairs the obligation of contract is an appeal to the United States Constitution, and cannot be foreclosed by a State court's determination whether there was a contract or what were its obligations. But while it is true that we are not bound by the construction of local statutes by the local courts in deciding the Constitutional question, "yet when we are dealing with a matter of local policy, like a system of taxation, we should be slow to depart from their judgment, if there was no real oppression or manifest wrong in the result." *Clyde* v. *Gilchrist,* 262 U. S. 94, 97.

The Georgia Supreme Court had to construe the following Georgia language:

> "The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said rail roads or any one of them: and after that, shall be subject to a tax not exceeding one half per cent. per annum on the net proceeds of their investments." § 15, Act of December 21, 1833, Acts 1833, pp. 256, 263–64.

It is not for us to read such a local law with independent but innocent eyes, heedless of a construction placed upon it by the local court. Such a tax provision is not a collocation of abstract words. In seeking the meaning conveyed by a local enactment it must be viewed as part of the whole texture of local laws and of the economy to which they apply. The language draws to itself presuppositions not always articulated, and even what is expressed

in words may carry meaning to insiders which is not within the sure discernment of those viewing the law from a distance. And so we are not prepared to say that the Supreme Court of Georgia was "manifestly wrong," *Hale* v. *State Board,* 302 U. S. 95, 101, in construing the exemption as limiting merely the right to impose property taxes. Our search is for something other than the meaning which the tax specialists may today find in the words. "It is for the meaning that at a particular time and place and in the setting of a particular statute might reasonably have acceptance by men of common understanding." *Hale* v. *State Board, supra.* We should reject the construction which the Georgia Supreme Court has placed upon what the Georgia Legislature of 1833 wrote only if we can be confident that the Georgia Legislature of 1833, by the words it used, could not have expressed the meaning thus attributed to it. A fair regard for the place of income taxes, as now commonly conceived, in the thought and practice concerning fiscal matters prevalent in 1833 precludes the rejection of the interpretation by the Georgia Court of the exemption of 1833.

There were, to be sure, so-called "faculty taxes" in Colonial times which had some of the characteristics of our present income taxes in that ability to pay was an ingredient. But even these taxes, hardly income taxes as we now know them, had by 1833 generally ceased to be, and perhaps even to be remembered. See, *e. g.,* Seligman, The Income Tax (2d ed.) Part II, c. I, pp. 367 *et seq.;* compare *Hylton* v. *United States,* 3 Dall. 171. In Georgia, the only imposition even remotely classifiable as an income tax because presumably based on ability to pay is that illustrated by a levy of "The sum of four dollars on all professors of law and physic, and the sum of fifty dollars on all billiard tables . . . ." Law No. 590, 1797, Watkins Digest of the Laws of Georgia, 1755–1799, pp. 646, 648. Not until the Civil War did Georgia, like the Federal Gov-

172

ernment, resort to what was indisputably an income tax. On the other hand, to read as the Georgia Supreme Court read the exemption provision of the Charter of 1833, as dealing with a tax on property, fairly reflects a practice, not unknown in the earlier days, of assessing property for tax purposes not by its exchange value but by its earning power. See, *e. g.*, Seligman, The Income Tax (2d ed.) pp. 382–83; Report of Special Commission on Taxation, Connecticut 1887, p. 9, with comments thereon in Kennan, Income Taxation, p. 207.

In this setting, it would savor of dogmatism to infuse into the 1833 exemption the income tax atmosphere of our own day. It does not seem inadmissible for the Supreme Court of Georgia to have found that what the Georgia Legislature of 1833 sought was to measure the commonplace property tax of the time not by a flat sum, or on the basis of a value abstractly ascertained, but in accordance with the fruits of the property, modestly limited.

To sanction such a restricted reading of the exemption is to respect a rule deeply rooted in history and policy, according to which contracts of tax exemption are to be read "narrowly and strictly." *Hale* v. *State Board, supra,* at 109. To recognize that more than a hundred years ago the Georgia Legislature did not forever bargain away the wholly untapped domain of income taxation is to recognize the governing consideration that "The power of taxation is never to be regarded as surrendered or bargained away if there is room for rational doubt as to the purpose." This was said when an earlier controversy affecting this charter was here. *Wright* v. *Georgia Railroad and Banking Co.,* 216 U. S. 420, 438. As to the astuteness of taxpayers in ordering their affairs so as to minimize taxes, we have said that "the very meaning of a line in the law is that you intentionally may go as close to it as you can if you do not pass it." *Superior*

*Oil Co.* v. *Mississippi,* 280 U. S. 390, 395–96. This is so because "nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions." Learned Hand, C. J., dissenting in *Commissioner* v. *Newman,* 159 F. 2d 848, 851. Conversely, the State, insofar as it may limit its basic power to tax to enable government to go on, can sail as closely as astuteness permits to the line of an immunity from such exaction. This is an old canon of judicial construction. The policy on which it rests antedates the charter before us, and it forms the setting in which the exemption is to be read. See, *e. g., Charles River Bridge* v. *Warren Bridge,* 7 Pick. (Mass. 1829) 344, affirmed, 11 Pet. 420 (1837). This requirement in the construction of legislative grants, especially tax exemptions, is merely an aspect of respecting legislative purpose. A legislature is not to be presumed to have relinquished its power of taxation beyond the narrowest rational reading of an exemption. The potential need of all governmental powers, and fairness in the distribution of burdens or in the enjoyment of privileges, preclude such an assumption.

We have carefully considered the earlier cases in which the scope of this exemption came before this Court. *Central Railroad and Banking Co.* v. *Georgia,* 92 U. S. 665; *Wright* v. *Georgia Railroad and Banking Co., supra; Wright* v. *Central of Georgia R. Co.,* 236 U. S. 674; *Wright* v. *Louisville and Nashville R. Co.,* 236 U. S. 687; *Central of Georgia R. Co.* v. *Wright,* 248 U. S. 525; *Central of Georgia R. Co.* v. *Wright,* 250 U. S. 519. It is needless to rehearse the issues they involved. Suffice it to say that the prior taxes found to have been barred by the exemption were all taxes on the railroad property. Now for the first time we are called upon to examine a candid, conventional income tax. Passing reference to "income" when the Court's mind was not focused upon the validity of an income tax as such must not be torn

from the context of discussion of property taxes. In any event, these phrases leave untouched our duty to respect the judgment of a State court as to the fair intendment of an exemption.

*Judgment affirmed.*

Mr. Justice Rutledge, agreeing with the Court's conclusions concerning the meaning of the Georgia statute, concurs in the result.