44625. SWANN v. BOARD OF TRUSTEES OF JOINT MUNICIPAL EMPLOYEES' BENEFIT SYSTEM et al.
(360 SE2d 395)

GREGORY, Justice.

The appellant served as City Councilman for the City of College Park during the years 1955-1960, and again from 1972 until June 17, 1985 when he retired. Prior to 1984 the City of College Park did not have a retirement plan covering elected or appointed members of the governing authority. On April 16, 1984, the City Council of College

Park (City Council) voted to adopt an ordinance providing for a retirement plan (plan) which would cover current members of the City Council, the City Attorney and City Judge. As specifically recommended by the Joint Municipal Employees' Benefit System (JMEBS) in order to assure the financial stability of the plan, the plan did not cover any former elected or appointed members of the governing authority of the City. The plan was to be administrated by JMEBS, pursuant to OCGA § 47-5-1 et seq. Those council members who elected to participate in the plan were permitted to pay into the retirement fund scheduled or lump sum contributions, without interest, in order to receive retirement benefit credit for past years of service on the City Council. To participate in the plan council members were required to pay 3% of their future salaries into the plan. No notice of intent to include elected officials in this plan was given or published prior to the vote taken by the City Council. Compare OCGA § 36-35-4 (a) (3).

On May 1, 1984, appellant elected to participate in the plan, and paid $720 into the retirement fund in order to receive credit for his past seventeen years of service. Further he agreed to have 3% of his future salary paid into the fund. This deduction was made from May 1, 1984 until June 17, 1985 when appellant retired. On May 2, 1985, in anticipation of his retirement, appellant submitted an application for retirement to JMEBS. Simultaneously he submitted an application for employee pension benefits to the Pension Board of the City of College Park, which was approved. On June 17, 1985, appellant began drawing monthly retirement benefits which exceeded by twenty percent the amount of his monthly salary as a city councilman.

On July 15, 1985, the newly elected members of the City Council voted to amend the ordinance in question, and exclude elected or appointed members of the municipal governing authority from coverage under the JMEBS plan. The amended ordinance specifically provided that it was to be given retroactive application. On August 30, 1985, the Board of Trustees of JMEBS informed appellant that his retirement benefits were terminated.

Subsequently JMEBS filed this action for interpleader, demanding the appellant and the City of College Park be required to establish their respective rights with regard to the retirement benefits in question. Appellant filed a petition for mandamus. The City filed an action for declaratory judgment. Both parties cross-claimed, counterclaimed, and moved for summary judgment. The trial court granted summary judgment to the City and denied summary judgment to appellant.

The trial court found that under the Municipal Home Rule Act, OCGA § 36-35-4 (a) (3), the City Council was required to publish notice of its intent to provide for the retirement plan in question. The

trial court concluded that the benefits in question are a pension, or gratuity, rather than retirement pay in the form of deferred compensation, and that OCGA § 36-35-4 evinces a legislative intent that any actions to increase pensions afforded elective members of the municipal governing authority must comply with the notice requirements of the statute. The trial court further concluded the City Council had the authority to amend the ordinance establishing the retirement plan to exclude elected or appointed members of the municipal governing authority from coverage thereunder.

1. OCGA § 36-35-4 (a) provides, "The governing authority of each municipal corporation is authorized to fix the *salary, compensation, and expenses* of its municipal employees and the members of its municipal governing authority and to provide insurance, *retirement, and pension benefits,* coverage under federal old-age, survivors and disability programs, hospitalization benefits and workers' compensation benefits for its employees, their dependents, and their survivors and for members of the municipal governing authority, their dependents, and their survivors, when such benefits are provided to municipal employees. . . . *With the exception of* the provision of insurance, federal old-age, survivors and disability programs, *retirement,* hospitalization and workers' compensation benefits, *any action to increase the salary or compensation* of the elective members of the municipal governing authority shall be subject to the following conditions and requirements: . . . (3) Such action shall not be taken until notice of intent to take the action has been published in a newspaper of general circulation designated as the legal organ in the county and in the municipal corporation at least once a week for three consecutive weeks immediately preceding the week during which the action is taken." (Emphasis supplied.)

The threshold issue in this case is whether the City Council was required to advertise notice of its intention to adopt the ordinance providing for the "retirement plan" in question. The trial court concluded that under *DeWitt v. Richmond County,* 192 Ga. 770 (16 SE2d 579) (1941), the benefits in question are in the nature of a pension or gratuity rather than retirement benefits, and that because pensions are not specifically excepted from the notice provisions of OCGA § 36-35-4, the ordinance adopting the retirement plan was invalid for failure to meet the statutory notice requirements. *DeWitt* declares that a pension is a gift.

We do not differ with *DeWitt* but believe the labels of "pension" and "retirement benefits" bear deeper analysis, and when that is done the provisions at issue here fall under the definition of "retirement benefits." (1) If A is employed by B for ten years, paid a monthly salary during that time, and at the end of the employment is rewarded for his good and faithful service by B who then promises to

pay him $500 per month for the balance of his life, that is a gift. It was not a term of the contract of employment. *DeWitt* would call this a pension. (2) If A is employed by B and the agreement in advance is that A will receive a salary and in addition, at the conclusion of his employment, he will receive $500 per month for life it is not a gift but part of the consideration supporting the employment contract. (3) If A has been working for B for a number of years and the two then agree that A shall continue to receive his salary but also be entitled, after a given period of time in the future, to terminate employment and receive $500 per month for life, it is not a gift. Neither does it become a gift should it be agreed that A receive partial credit for past years' service toward the total required time for entitlement to the benefits. That merely makes the employment contract more valuable to A. It remains a contract however and not a gift. *Burks v. Bd. of Trustees of the Firemen's Pension Fund*, 214 Ga. 251 (104 SE2d 225) (1958); *Bender v. Anglin*, 207 Ga. 108 (60 SE2d 756) (1950). Under this analysis Swann's benefits were not a gift and therefore not a pension within the meaning of *DeWitt* but retirement benefits under OCGA § 36-35-4. His situation fits within example (3) above. When the retirement ordinance became effective he had to serve an additional period of time to obtain the benefits he ultimately received.[1]

This result is consistent with our construction of OCGA § 36-35-4, as it existed in 1975,[2] in *City of Marietta v. Holland,* 252 Ga. 299 (314 SE2d 97) (1984). While we noted "that, as a general proposition, retirement plan benefits are deferred compensation," 252 Ga. at 301, we concluded that the legislature had drawn a clear distinction between "compensation" on the one hand, and "retirement and pension benefits" on the other in determining what type benefits are subject to the statutory notice requirements. We were not called on in that case to determine the difference between pension and retirement ben-

---

[1] It is true that Swann was eligible on the effective date of the ordinance to resign and be vested with the right to receive a lesser benefit when he reached the age of 65. See Article IV, Section 2(a) and (b); Article V, Section 1(a); and Article VI, Section 4(a) of the Retirement Plan adopted by ordinance of the City Council of College Park on April 16, 1984. But this is not the option which Swann chose. Instead, he opted to serve on for an additional period of time and to receive additional benefits. See Article V, Section 1(a), supra. This is a contract, not a gift. It fits within example three above.

[2] OCGA § 36-35-4 as it existed in 1975 provided, "The governing authority of each incorporated municipality is authorized to fix the *salary, compensation, and expenses* of the municipal employees and members of the governing authority and/or legislative body, and to provide insurance, *retirement and pension benefits,* coverage under Federal Old Age and Survivor's Insurance programs, hospitalization benefits, and workmen's compensation benefits, for its employees, their dependents and survivors, *provided that no action to increase compensation of the elective members of the governing authority or legislative body shall be taken until notice of intent to do so shall be published in a newspaper of general circulation in such municipality at least once a week for three consecutive weeks immediately preceding the week in which such action is taken."* (Emphasis supplied.)

efits as all parties agreed that retirement benefits were at issue. The 1979 and 1981 amendments[3] to OCGA § 36-35-4 amplify the legislature's intention to distinguish between notice requirements with regard to "salary and compensation" and "retirement benefits," even though the latter may in fact be "compensation" deferred in time, by expressly excepting retirement benefits from the notice requirements.

Therefore the trial court erred in granting summary judgment to the City and denying it to appellant on this issue.

2. The trial court further erred in its conclusion that the City Council had the authority to amend the ordinance to exclude appellant and other elected officials from coverage under the retirement plan. Where a statute or ordinance establishes a retirement plan for government employees, and the employee contributes toward the benefits he is to receive and performs services while the ordinance or statute is in effect, the ordinance or statute becomes part of the contract of employment and is a part of the compensation for the services rendered so that an attempt to amend the statute or ordinance and reduce, or eliminate, the retirement benefits the employee is to receive violates the impairment clause of the state constitution. 1983 Georgia Constitution, Art. I, Sec. I, Par. X; *Burks v. Bd. of Trustees of the Fireman's Pension Fund,* supra; *Bender v. Anglin,* supra.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 10, 1987 —
RECONSIDERATION DENIED SEPTEMBER 30, 1987.

*Alston & Bird, G. Conley Ingram, Peter M. Degnan,* for appellant.

*Walter E. Sumner, Everette Doffermyre, Jr.,* for appellee.

*Groover & Childs, Denmark Groover, Jr., Webb, Fowler & Tanner, Keith W. Mason,* amici curiae.

---

[3] See Ga. Laws 1979, p. 645, § 2 and Ga. Laws 1981, p. 1741, § 1.