S90A0575. PARRISH et al. v. EMPLOYEES' RETIREMENT
SYSTEM OF GEORGIA et al.
S90A0576. GEORGIA ASSOCIATION OF EDUCATORS v.
TEACHER RETIREMENT SYSTEM OF GEORGIA.
(398 SE2d 353)

BENHAM, Justice.

Appellants are retired teachers and retired employees of the State of Georgia, whose retirement benefits were statutorily exempted from state income tax. See OCGA §§ 47-2-332 (a) (1); 47-3-28 (a); 48-7-27 (a) (4) (A) (i) and (viii). In September 1989 appellants' retirement benefits became subject to state income taxation by the passage and approval of HB No. 1 EX. Appellants maintain that HB No. 1 EX is an unconstitutional impairment of the obligation of their contract with the State.

> 1. [A] statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and . . . the impairment clause of our constitution [1983 Ga. Const., Art. I, Sec. I, Par. X] precludes the application of an amendatory statute or ordinance in the calculation of the employees' retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable . . . [I]f the employee performs services during the effective dates of the legislation, the benefits are constitutionally vested, precluding their legislative repeal as to the employee. . . .

*Withers v. Register*, 246 Ga. 158 (1) (269 SE2d 431) (1980). See also *Swann v. Bd. of Trustees &c.*, 257 Ga. 450 (360 SE2d 395) (1987). Since each retiree contributed to the retirement system and performed services while the law exempting retirement benefits from state income taxation was in effect, that law became part of the contract of employment of the retiree. However, since 1877, the Georgia Constitution has provided that

> [t]he state may not suspend or irrevocably give, grant, limit, or restrain the right of taxation and all laws, grants, contracts, and other acts to effect any of these purposes are null and void.

1983 Ga. Const., Art. VII, Sec. I, Par. I. See also 1976 Const., Art. VII, Sec. I, Par. I; 1945 Const., Art. VII, Sec. I, Par. I; 1877 Const., Art. IV, Sec. I, Par. I. Thus, since 1877, the Georgia General Assembly has had no power to grant an irrevocable tax exemption, and

[a]ll parties whomsoever . . . are charged with knowledge of all constitutional limitations which Georgia has placed upon the powers of her legislature . . . [A]n act of the legislature which contravenes the Constitution . . . [is] by the State Constitution declared void. . . . The Constitution denies to the legislature the power to surrender the sovereign right of the State to tax. [Art. VII, Sec. I, Par. I.] Nothing the legislature does, no matter how unambiguously it is expressed, can have validity if it offends [Art. VII, Sec. I, Par. I].

*IBM Corp. v. Evans*, 213 Ga. 333, 335 (99 SE2d 220) (1957). If, by passage of the Teachers' Retirement Act and the Employees' Retirement Act the General Assembly bestowed an *irrevocable* tax exemption upon the retirees, that tax exemption was invalid under the Georgia Constitution, and the retirees would have no vested right to an exemption which they were never entitled to receive. See *Tate v. Teacher Retirement System*, 257 Ga. 365 (1) (359 SE2d 649) (1987). The constitutional provision, however, does not prohibit a *revocable* grant of a tax exemption. See *Felton v. McArthur*, 173 Ga. 465, 471 (160 SE 419) (1931). We must therefore focus on whether the statutory tax exemptions are irrevocable.

2. The retirees agree that Art. VII, Sec. I, Par. I prohibits the legislature from granting an irrevocable exemption from state income taxation, and maintain that the drafters of the 1877 Constitution intended the provision to prevent only *perpetual* or *permanent* tax exemptions. They contend that the income tax exemption granted each of them is not a forbidden permanent grant of tax exemption in perpetuity, but an acceptable non-perpetual exemption of limited duration that will terminate as payment of retirement benefits to each employee ceases. Thus, the retirees argue, the tax exemption is not irrevocable because the tax-free benefits will not be paid to or on behalf of each retiree in perpetuity. The State asserts that the retirees' definition of "irrevocable" is not that ascribed to it by the drafters of the Constitution of 1877.

The scope of the predecessor of Art. VII, Sec. I, Par. I was discussed at the Constitutional Convention of 1877, which wrote the Constitution of 1877. Delegate Robert Toombs stated that the right to tax provision "applies to everybody under the sun. This applies alike to corporations, individuals, and the federal government itself." Small, A Stenographic Report of the Proceedings of the Constitutional Convention held in Atlanta, Georgia 1877. In *Felton*, supra at 471-472, the court noted that

[p]rior to the adoption of the constitution of 1877 the legislature had indulged in the practice of exempting certain corpo-

rations and taxpayers from the payment of taxes. . . . It was the purpose of the makers of the constitution to deny to the legislature the power to grant exemptions from taxation by laws, contracts, or any other acts. . . . Its purpose was to prohibit exemptions from taxation, and to make void all limitations of every kind and character upon the taxing power of the State.

In *Nash v. Nat. Preferred Life Ins. Co.*, 222 Ga. 14 (2) (148 SE2d 402) (1966), this court examined Art. VII, Sec. I, Par. I, and concluded that "irrevocable," as used therein, meant "incapable of being revoked." In light of the history of the passage of Art. VII, Sec. I, Par. I, we cannot agree with the employees' interpretation of "irrevocable." That the retirement benefits paid to each retiree will not be paid to or on behalf of that retiree in perpetuity does not render the tax exemption revocable. As to each of these retirees, the tax exemption is irrevocable, and that is untenable in light of Art. VII, Sec. I, Par. I. We therefore conclude that HB No. 1 EX is not an unconstitutional impairment of the retirees' contracts with the State.[1]

3. Since we are dealing with "a matter of local policy, like a system of taxation," and the construction placed upon a state statute by this court should be respected absent "real oppression or manifest wrong in the result," (*Atlantic CLR Co. v. Phillips*, 332 U. S. 168, 170 (67 SC 1584, 91 LE 1977) (1947)), we do not find HB No. 1 EX to violate the U. S. Constitution's prohibition against state laws that impair the obligation of contract (Art. I, Sec. X).

4. In light of the above holdings, the trial court did not err in denying appellants' motions for class certification and the establishment of an escrow fund.

*Judgment affirmed. All the Justices concur, except Smith, P. J., and Bell, J., who dissent.*

SMITH, Presiding Justice, dissenting.

The purely personal issues in this case involve the women and men who willingly devoted their time, energy, and youth to shape the destiny of Georgia. Anyone who grew up in Georgia will personally know many of these people, they include: all the teachers who have guided our lives, our children's lives, and in some cases our grandchildren's lives. Now that these retirees have exhausted their youth and earning potential for the benefit of the State, the State, for the first

---

[1] The holding in *Quillian v. Employees' Retirement System*, 259 Ga. 253 (379 SE2d 515) (1989), dealt with a claim of estoppel and is not controlling as to the issue presented herein, an unconstitutional impairment of the obligation of contract. See *Quillian*, supra at 254, n. 2.

time in its history, turns a cold shoulder to those it has always constitutionally protected. The State has attempted to forge a sword from a shield that was intended to protect these retirees.

The trial court erred in holding that Art. VII, Sec. I, Par. I of the 1983 Georgia Constitution bars the contract between the State and the retirees. The contract, in the form of a statutory exemption, was merely a method the General Assembly elected to use in distributing the retirees' constitutionally protected retirement benefits. Art. VII, Sec. I, Par. I, was never intended to, nor can it, limit the General Assembly's express power to distribute constitutionally guaranteed retirement benefits.

A look into the history of the 1877 and the 1945 constitutions demonstrates that Art. VII, Sec. I, Par. I, was ratified to protect the state treasury and the retirees. Its purpose was to stop corporate tax immunity so that the previously immune tax dollars could go into the treasury and then to the retirees.

Although the 1877 Constitution was repealed in its entirety by the 1945 Constitution, *Wheeler v. Trustees of Fargo School Dist.*, 200 Ga. 323, 330 (37 SE2d 322) (1946), it was the instrument that gave life to Georgia's strong state policy of providing benefits to those who benefit the State.

### The Legislative History of The 1877 Constitution

The 1877 Constitution was Georgia's attempt to re-establish self-government after the Reconstruction period. *Constitutional Law*, § 43 Ga. E. L. The 1877 Georgia Constitution provided that one of the purposes of state taxation was to provide benefits for those who had assisted the Confederate States during the war. The drafters were concerned with the General Assembly's practice of granting tax immunity to corporations, especially railroads.[2] They wanted to stop the practice so that there would be money in the treasury to benefit those who benefited the State.

### The 1877 Constitution
### The Provisions Related to Taxation

The 1877 Constitution is divided into only 13 Articles, and two of

---

[2] During the convention, Mr. Toombs, one of the drafters said: "You have virtually taken away so much of the life of the state and given it to these corporations for their support. Without taxation and full control over the power of taxation, the state cannot support her militia, hold her courts of justice, defend the people, and *preserve the rights of society*. You cannot administer your laws or *legislate for the benefit of the people*, or do anything else connected with the government. When this power of taxation is gone and when you say that the legislature can give this power away to them, you then and there put yourself in the power of these corporations. . . ." (Emphases supplied.) Small, S. W., A Stenographic Report of the Proceedings of the Constitutional Convention held in Atlanta, Georgia 1877, at 385.

them relate to taxation. **Article IV "Power of General Assembly over Taxation, etc.," and Article VII "Finance, Taxation, and Public Debt."** A close examination of the placement of the provisions, their purpose, and the other constitutional provisions ratified at the same time, reveals that the State was profoundly interested in obtaining tax revenue from those corporations who were profiting from being in the State in order to provide tax revenues for the benefit of those individuals who benefited the State.

**Article IV, "Power of the General Assembly over Taxation, etc."** is composed of two sections: **"Section I Taxation"** contains one paragraph that limits the General Assembly's power of taxation. (This is the Article that the trial court held bars the contract.) **"Section II Regulation of Corporations"** contains seven paragraphs, five of which are concerned exclusively with *corporations*. The placement alone, indicates the drafter's main concern was stopping corporate tax immunity.

**Article VII, "Finance, Taxation, and Public Debt,"** in pertinent part, expressed the strong state policy in favor of benefiting those individuals who benefited Georgia. Art. VII, Sec. I, Par. I, declared that one of the purposes of taxation was to provide for injured or disabled Confederate soldiers and their widows.[3] This provision announced the State's intention to allow certain individuals a constitutional right to share in the State's tax revenues.

The 1877 Constitution manifests the strong policy of Georgia to protect those individuals who have benefited the State, provide them with a constitutional right to share in the State's tax revenues, some of which would come from stopping the corporate tax immunity practice, and stop the General Assembly from granting future corporate tax immunity.

### The 1945 Legislative History

The new constitution intended, among other things, to provide tax revenue for the State's teachers. The legislative history also exhibits the drafters' concern with corporations, especially railroads, be-

---

[3] "ARTICLE 7. Finance, Taxation, and Public Debt. Section 1. Power of Taxation. §5882. (5180.) Paragraph 1. *Taxation, how and for what purposes exercised.* The powers of taxation over the State shall be exercised by the General Assembly for the following purposes only: . . . To supply the soldiers who lost a limb, or limbs, in the military service of the Confederate States, with substantial artificial limbs during life, and to make suitable provisions for such Confederate soldiers as may have been otherwise disabled, or permanently injured in such service, or who, by reason of age and poverty, or infirmity and poverty, or blindness and poverty, are unable to provide a living for themselves; and for the widows of such Confederate soldiers as may have died in the service of the Confederate States, or since, from wounds received therein or disease contracted therein. . . . 1877 Constitution of the State of Georgia, § 5882 Code of Georgia, 1895.

ing immune from state taxation.[4] The new Georgia Constitution, as drafted, contained a constitutional guarantee that state tax revenue would be used to assist the State's teachers when they retired. Art. VII, Sec. I, Par. I, as ratified, was intended: "To authorize the levy of taxes for, and to make provision for the payment of benefits and other costs under a teacher's retirement system of Georgia." *1877 Constitution of the State of Georgia as amended through 1943.*

## The 1983 Legislative History

During the discussion of Art. VII, Sec. I, Par. I of the 1983 Georgia Constitution, the committee discussed the history of the provision and the problems that had been created by granting tax immunity to corporations, especially railroads. *Select Committee on Constitutional Revision, Committee to revise Article VII, Section I*, pp. 1-6.

## The 1983 Constitution

The placement of the constitutional provisions is important to this decision. Article III of the Constitution is entitled "Legislative Branch." Art. III, Sec. VI, Par. I provides:

> The General Assembly shall have the power to make all laws not inconsistent with this Constitution, and not repugnant to the Constitution of the United States, which it shall deem necessary and proper for the welfare of the state.

The General Assembly is to be absolutely unrestricted as long as it does not enact laws which are inconsistent with the state and federal constitutions. Art. III, Sec. VI, Par. III forbids the General Assembly from abridging its own powers. Art. III, Sec. X, Par. I, entitled "Retirement Systems," provides:

> Public funds may be expended for the purpose of paying benefits and other costs of retirement and pension systems for public officers and employees and their beneficiaries.

---

[4] Former Governor Arnall, Chairman of the committee, said:
I have no antipathy whatsoever, no hatred in the least, no feeling against any corporation in the State. I want each and every one in Georgia to flourish, to become profitable and be able to maintain their business standards *so that they may be of service to the people of Georgia, and may assist us in developing this State to the fullest extent.* . . .

The Georgia Railroad, no matter how much money they make —. . . for the one hundred years they have operated with immunity. They have made . . . fortunes. . . ." (Emphasis supplied.) *Vol. I, Records of Constitutional Commission, 1943-44* at pp. 188-8 and 211.

Although Art. III, Sec. VI, Par. I, above gives the General Assembly the general powers to enact any laws not in conflict with the constitutions, the "Retirement Systems" provision grants the General Assembly the specific power to use state tax revenue to pay retirement benefits and costs.

Article VII of the constitution is entitled "Taxation and Finance." Art. VII, Sec. III, Par. I, provides that the power of taxation may be for any purpose authorized by law. One purpose specifically authorized, representing Georgia's public policy of providing tax benefits to those who benefited the State, is in Art. III, Sec. X, Par. I, as set out above. This constitutional provision grants the General Assembly the power to use tax revenue to pay the benefits and costs of a retirement system and grants the retirees a constitutional share of the State's tax revenue.

The basic flaw in the trial court's holding that Art. VII, Sec. I, Par. I, barred the contract between the retirees and the State can be seen by looking to the specific purpose of taxation in Art. III above and the limit on the General Assembly as set out in Art. VII, Sec. I, Par. I:

> The state may not suspend or irrevocably give, grant, limit, or restrain the right of taxation and all law, grants, contracts, and other acts to effect any of these purposes are null and void. *Except as otherwise provided in this Constitution*, the right of taxation shall always be under the complete control of the state.

Article III is the provision that "otherwise" provides. The General Assembly is constitutionally authorized to use tax revenue to pay "benefits and other costs." Article III also gives the retirees a constitutional right to share in the state tax revenue. Only when a law is an attempt to "effect" the purpose of irrevocably restraining the right of taxation is the law declared void. The statutes (the contracts in question) that are in the form of tax exemptions, are tax benefits. Because the retirees are constitutionally guaranteed a right to share in the state's tax revenue, and the General Assembly is constitutionally empowered to use tax revenues to pay "benefits and costs," the General Assembly can choose any method it wishes to accomplish these constitutional purposes. By electing to distribute a portion of the benefits in the form of exemptions, the State avoided the costly administrative expenses involved in tax collection. Each administrative expense eliminated becomes a savings for the State.

In construing the constitutionality of an act, every presumption is to be made in favor of its constitutionality until it is shown to be unconstitutional. As expressed in *Park v. Candler*, 114 Ga. 466, 472

(40 SE 523) (1901):

> "Acts of a legislature constitutionally organized are to be presumed to be constitutional, and it is only when they *manifestly* infringe some of the provisions of the constitution, or violate the rights of the citizen, that their operations should be impeded by judicial power. . . . A solemn act of the government will not be set aside by the court in a doubtful case. The incompatibility or repugnancy between the statute and the constitution, must be clear and palpable. . . . Before an act of the General Assembly of the State, assented to by the executive, is declared null and void, the judicial branch of the government should be clearly satisfied. If it be at all doubtful, the doubt most assuredly should turn the scale in favor of the construction which the two other branches of our State government have given to the constitution." [Cits. omitted.]

The restriction on the General Assembly found in Art. VII, Sec. I, Par. I, was never intended to, and cannot, limit the express constitutional power of the General Assembly. If it is so read, it conflicts with Art. III, Sec. X, Par. I of the Constitution, and it must yield to Art. III. Article III, Sec. X, Par. I guarantees the retirees a share of state tax revenue, and expressly gives the General Assembly the power to use tax revenue for the purpose of "paying benefits and other costs of retirement and pension systems." Article VII, Sec. I, Par. I, cannot destroy the General Assembly's express constitutional power, nor can it be used to restrict the method by which the General Assembly exercises that power. The majority's destruction of that power is unconstitutional.

Once the power was granted by the Constitution, the method of exercising the power was left to the circumspection of the General Assembly with the knowledge and understanding that the protection of people and their property is the paramount duty of the State. Article I, Sec. I, Par. II, 1983 Constitution of the State of Georgia.

The retirees bore their just share of the cost of government. They have paid income tax, property tax, ad valorem tax, city and county and municipality taxes, sales tax and other forms of taxes. They contributed to the system from which they now wish to obtain their deferred compensation as promised. They have reasonable expectations and they have faithfully relied upon constitutional and statutory law, and the assurances of all three branches of Georgia government.[5] Ar-

---

[5] What other assurances might be needed? The retirees have constitutional protection and the legislative branch, the General Assembly, and executive branches, the Governor and

ticle VII, Sec. I, Par. I, was intended to benefit these individuals, it was never intended to be used against them to deprive them of their constitutional rights. To paraphrase a portion of Justice Black's dissent in *FPC v. Tuscarora Indian Nation*, 362 U. S. 99, 142 (80 SC 543, 4 LE2d 584) (1960): "Great [States], like great men, should keep their word."

### Reliance And Estoppel

When former Judge Quillian "relied" on the law, we held that the State was estopped to deny his benefits. *Quillian v. Employees' Retirement System of Ga.*, 259 Ga. 253 (379 SE2d 515) (1989). This Court respected his expectation interest and we should likewise respect the expectation interest of these retirees. In comparing the facts of the *Quillian* case to the facts before us today, we find that Judge Quillian was informed by the Employees' Retirement System, while he was still employed with the State, that he had the requisite time in for full retirement benefits. Based upon this assurance he retired. Some months later he was notified that the Employees' Retirement System had reevaluated his retirement time and he did not have the requisite 34 years for full retirement, and his retirement benefits were reduced. This Court, in reversing a trial court's holding favorable to the Employees' Retirement System, on the basis of estoppel, stated in *Quillian* at 254:

> 4. (a) All parties to this case acknowledge that Judge Quillian did everything within his power to ascertain his retirement benefits *prior* to the time that he submitted his resignation; that the retirement system calculated his benefits; that he relied expressly upon this calculation; that he so stated in his letter of resignation to the governor; that the

---

the Attorney General, approved the statutes (contracts) as enacted. Long after the statutes were in place, the judicial branch, this Court, held "[a] statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment. . . ." *Withers v. Register*, 246 Ga. 158 (269 SE2d 431) (1980). See also *Swann v. Bd. of Trustees &c.*, 257 Ga. 450 (360 SE2d 395) (1987). The executive branch, the Attorney General, stated:

It is clearly the law of this state that a statute establishing a retirement plan for government employees becomes a part of an employee's contract of employment. . . .

Any type of restriction, reduction or divestiture of statutorily granted retirement rights would be precluded or restricted by the constitutional prohibitions forbidding the impairment of contracts. Op. Att'y Gen. U85-3.

The federal Impairment Clause has also clearly been extended to the protection of contractual rights granted by state laws establishing retirement plans for public employees and has been applied by the U. S. Supreme Court to prevent the operation of a state statute impairing the obligation of a contract for retirement benefits. Op. Att'y Gen. U83-72.

resignation was accepted by the governor; that the calculated benefits were paid to him for a period of time after his retirement; and that his act of retirement was final and irreversible. (Fn. omitted.)

This Court held that the Employees' Retirement system could be estopped because the act was within its powers and it was required by "right and justice." Id. at 255.

No one disputes that the retirees met the standard set out in Division 4 (a) of the *Quillian* opinion. (See above.) In deciding former Judge Quillian's case we held that "right and justice" required the State to be estopped. These retirees are entitled to the same "right and justice."

### The Contract Between The Retirees And The State

The statutes enacted by the General Assembly are contracts between the State and the retirees. As stated in *Withers v. Register*, 246 Ga. 158, 159 (269 SE2d 431) (1980):

> Long before the rule was recognized generally by the courts of the several states, *it was the law of this state that a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment* if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and that the impairment clause of our constitution (Art. I, Sec. I, Par. VII, Constitution of Georgia of 1976; Code Ann. § 2-107)[6] precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable. . . . *[I]f the employee performs services during the effective dates of the legislation, the benefits are constitutionally vested, precluding their legislative repeal as to the employee.* . . . (Emphases supplied.)

As the majority opinion recognized, the "law became part of the contract of employment of the retiree." (Majority op. at 613.) Those contracts cannot be impaired without violating the constitutions.

The majority opinion creates a conflict between Art. III, Sec. X, Par. I, and Art. VII, Sec. I, Par. I of the Constitution. The opinion

---

[6] The impairment clause of the 1976 Constitution of the State of Georgia, Art. I, Sec. I., Par. VII, is incorporated into the 1983 Constitution of the State of Georgia as Art. I, Sec. I, Par. X.

also limits the constitutionally granted power that rested in the General Assembly to use any method it chose in fulfilling its constitutional obligation to the retirees. It ignores the retirees' reliance upon the public policy of this state that has until today given them constitutional protection, Art. III, Sec. X, Par. I, and it ignores the retirees' reliance on their contracts with the State. See *Withers*, supra. The reliance interest of Judge Quillian was upheld by this Court, *Quillian*, supra; however, the reliance interest of these retirees is ignored.

## Separation Of Powers

There is another constitutional provision that is trampled by the majority decision. Article I, Sec. II, Par. III, of the 1983 Constitution of the State of Georgia provides, in part, "The legislative, judicial, and executive powers shall forever remain separate and distinct. . . ." This Court in *McCutcheon v. Smith*, 199 Ga. 685, 691 (35 SE2d 144) (1945), reaffirmed the constitutional precept that once a legislative act has been construed by the judiciary, the legislature cannot subsequently enact a law that interprets "the meaning of the previous act in a way prejudicial to the complainant's rights." The Court in *McCutcheon*, id.

> [Q]uoting from *Wilder v. Lumpkin*, 4 *Ga.* 208, 212, said: "A legislative exposition of a doubtful law is the exercise of a judicial power, and if it interferes with no vested rights, it impairs the obligation of no contract, and is not in conflict with the primary principles of our social compact, it is in itself harmless, and may be admitted to retroactive efficiency; but if rights have grown up under even a law of somewhat ambiguous meaning, then the universal rule of our system — indeed of the English system of government and of other systems which approximate to free government — applies. That rule is, the courts declare what the *law is*, the legislature declares what the law *shall be*." It was stated further there that the original act in question was a contract between the individual and the legislature, that both parties were bound by this stipulation, and that what its meaning was was for the courts to determine, and it was held that "he is not subject to the peril of legislative construction; if he were, then charters and grants would be but a mockery. Who would accept a charter if it was subject at all times to legislative construction; that is to say, subject to be impaired by law? No sane man, or half-witted set of men. The power to sit in judgment upon his own contracts by one of the parties, is nowhere conceded under any system of free government; that would be an enormity at which justice revolts."

This Court judicially determined that a statute establishing a retirement plan for a government employee becomes a part of the employee's contract of employment, *Withers*, supra, and *Swann*, supra; therefore, the subsequent act of the General Assembly which is "prejudicial to the complainant's rights[,]" *McCutcheon*, supra at 691, is an unconstitutional invasion of the judicial branch by the legislative branch.

### Conclusion

The United States Supreme Court has declared that it should be slow in departing from the judgment of a state court in a matter of local policy, like a system of taxation, unless there is "real oppression or manifest wrong in the result." *Atlantic CLR Co. v. Phillips*, 332 U. S. 168, 170 (67 SC 1584, 91 LE 1977) (1947). However, the Court, quoting *Clyde v. Gilchrist*, 262 U. S. 94, 97 (43 SC 501, 67 LE 883) (1923) also said:

> A claim that a State statute impairs the obligation of contract is an appeal to the United States Constitution, and cannot be foreclosed by a State court's determination whether there was a contract or not or what were its obligations. . . .

This case does not just involve a system of taxation. With today's opinion this Court has unconstitutionally limited the constitutionally granted power of the General Assembly to use whatever method it desires in paying retirement benefits and costs, it has ignored the contract between the retirees and the State in violation of state and federal constitutional law, it has failed to recognize the doctrine of estoppel for the benefit of these retirees when it so recognized the doctrine for the benefit of a former judge, and it ignores the unconstitutional legislative usurpation of a judicial function. The impairment of the retirees' contracts is oppressive and manifestly wrong.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED DECEMBER 3, 1990 —
RECONSIDERATION DENIED DECEMBER 19, 1990.

*Bolton & Park, Arthur K. Bolton, Hurt, Richardson, Garner, Todd & Cadenhead, Harold N. Hill, Jr., Alston & Bird, G. Conley Ingram, Walter G. Elliott, Theodore G. Frankel, Michael E. Kramer,* for appellants.

*Michael J. Bowers, Attorney General, David A. Runnion, Daniel M. Formby, Senior Assistant Attorneys General, Warren R. Calvert,*

*Assistant Attorney General,* for appellees.