A93A1252. EMPLOYEES RETIREMENT SYSTEM OF GEORGIA
v. EVANS.

(439 SE2d 690)

BLACKBURN, Judge.

In late 1990, the appellee, Warren Evans, applied for a retirement pension from the Employees Retirement System of Georgia (ERS). The ERS found him to have 16 years of creditable service, including ten years and nine months of legislative service and approximately five years as Commissioner of Insurance, and awarded him a monthly retirement benefit of $1,036.39, which Evans began receiving in March 1991. However, later that same month, the ERS canceled Evans' retirement benefits, after being advised by an opinion of the Attorney General that Evans' years of legislative service could not be credited towards his retirement through the ERS.

Evans subsequently commenced this action seeking reinstatement of his retirement, and the trial court granted summary judgment in his favor. In this appeal by the ERS, the issue is whether the statutory contracts to which Evans was a party entitled him to credit for his years of part-time service as a legislator with the Georgia General Assembly towards a retirement allowance that was based on the full-time position as Commissioner of Insurance he held for approximately five years.

The ERS was statutorily created in 1949, to provide retirement allowances and other benefits for employees of the state and political subdivisions thereof. OCGA § 47-2-20. The Legislative Retirement System (LRS) was also statutorily created in 1967, to provide similar benefits for members of the General Assembly. OCGA § 47-6-20.

Effective May 1, 1971, the two retirement systems were merged, all the membership and assets of the LRS were transferred to the ERS, and all members of the LRS were required to become members of the ERS, although the act creating the LRS was not repealed and it remained a statutory system. All of the above legislation occurred before Evans was elected to the Georgia House of Representatives in 1974. Evans took office in January 1975, at which time he became a member of the ERS in accordance with OCGA § 47-6-41.

In 1979, the General Assembly began reviving the LRS and separating that system from the ERS. Specifically, the act creating the LRS was amended to provide for an *election by General Assembly members* prior to July 1, 1980, choosing between (1) continuing membership in the ERS, (2) withdrawing from the ERS and becoming a member of the newly revived LRS, or (3) declining membership in either retirement system. The election was irrevocable as long as the person remained a member of the General Assembly. Ga. L. 1979, pp. 931, 932. The trial court relied heavily on the irrevocability of the election language above-described, in determining that Evans had an

initial right to transfer his retirement credits, which rights, the court held, were protected from forfeiture by the 1980 amendment hereinafter discussed.

The act was further amended in 1980 to extend the deadline for making such an election until January 12, 1981. The 1980 amendment also added that " '[a]ny member of the General Assembly electing to become a member of this . . . Section [LRS] shall not thereby forfeit any rights or privileges possessed by such member under the Employees' Retirement System *at the time such election is made,* and such rights and privileges shall continue to apply to such member.' " (Emphasis supplied.) Ga. L. 1980, pp. 611, 615 (now codified at OCGA § 47-6-42 (d)). It was this non-forfeiture provision upon which the trial court relied heavily in determining that Evans' part-time legislative service could be transferred as creditable service under the ERS when he became Commissioner of Insurance.

In 1981, the General Assembly passed Senate Bill 157, which amended the ERS to allow for the "transfer [of] all creditable service acquired under the Georgia Legislative Retirement System to the Teachers' Retirement System or Employees' Retirement System at such time as a former member of LRS is employed in a position which is covered by TRS or ERS." Ga. L. 1981, pp. 1938, 1940. This bill, which would have authorized the transfers which the trial court approved, was vetoed by then Governor Busbee, who indicated that the effect of Section 1 of the bill would be to authorize service transfers from the LRS to the ERS or the Teachers Retirement System. Ga. L. 1981, pp. 1938, 1941.

No express statutory authority existed for the transfer of service under LRS to ERS as of 1980, the date of election by Evans.

By amendments passed in 1984 and 1985, the General Assembly eventually precluded any possibility of the use of legislative service as creditable service for any public retirement system other than the LRS, except for some limited situations specified in OCGA § 47-1-9, none of which apply in this case. In 1984, OCGA § 47-6-42 (b) was amended to provide that persons who became General Assembly members between the date of the 1979 statute and July 1, 1984, could still choose between the ERS or the LRS; however, persons who became members of the General Assembly after July 1, 1984, could no longer participate in the ERS. Ga. L. 1984, pp. 758, 759. The 1985 amendment generally prohibited using any legislative service obtained after December 31, 1985, as creditable service for any retirement system other than the LRS. Ga. L. 1985, pp. 1334, 1335.

On November 30, 1980, pursuant to the 1980 amendment of the LRS, Evans elected to withdraw his membership in the ERS and to become a member of the LRS. He remained a member of the General Assembly until October 1985, when he resigned his position in the

House of Representatives to accept his appointment as Commissioner of the Department of Insurance. As Commissioner of that state agency, Evans was required to become a member of the ERS, and at that time the administrator of the ERS transferred Evans' ten years and nine months of service under the LRS to his account in the ERS. Evans thus received over ten full years of creditable service for retirement purposes under the ERS for part-time, legislative service.

Evans applied for a retirement allowance from the ERS after he was defeated in his bid for re-election as Commissioner of Insurance in 1990. His application was approved, but after he received his first check, the Attorney General issued an opinion providing that a legislator who elected LRS membership in 1979 or 1980 cannot transfer that part-time legislative service to the ERS upon assuming a position that is covered under the ERS. See Op. Atty. Gen. 91-6. As a consequence, the ERS canceled Evans' retirement benefit, and this action followed.

In granting summary judgment for Evans, the trial court considered separately the credit for legislative service earned by Evans as a required member of the ERS from 1975 until 1980 prior to his election to participate in the LRS, and for legislative service he earned while a member of the LRS prior to his transfer back to the ERS in 1985. With regard to the first period of service, the trial court emphasized that not only did Evans have the right to have legislative service credited under the ERS, such was actually required under the 1971 statute in effect when Evans took office in 1975. Because the 1980 amendment, pursuant to which Evans elected to transfer to the LRS, provided that a General Assembly member making such an election "shall not forfeit any rights or privileges possessed . . . under the Employees' Retirement System," the trial court further concluded that Evans retained the right to have his legislative service count as creditable years of service under the ERS when he left the General Assembly.

With regard to Evans' legislative service from 1981 through 1985, during which Evans' retirement contributions were paid into the LRS, the trial court found that there was no necessity of a specific authorization to transfer creditable service under the LRS as creditable service under the ERS upon Evans' departure from the General Assembly. Rather, the 1980 statutory provision that the retirement system election would be "irrevocable as long as such person is a member of the General Assembly" recognized the possibility that a LRS member could again become an ERS member following service in the General Assembly.

In short, the trial court reasoned, when Evans was required to resume membership in the ERS when he resigned from the General Assembly to accept his appointment as Commissioner of Insurance,

his election to be a member of the LRS was revoked, thus restoring his right to credit his legislative service under the ERS. Concomitant with Evans' ability to revoke his 1980 election for LRS membership, the trial court found that the ERS possessed implicit, if not express, authority to transfer accounts from the LRS and thus credit Evans' total legislative service back under the ERS when he became Commissioner of Insurance.

On appeal, the ERS contends that the trial court's determination that Evans retained the right to re-establish legislative service under the ERS was inconsistent with Evans' election for LRS membership pursuant to the 1980 amendment, and that the transfer into the ERS of legislative service previously credited under the LRS was improper because there was no express statutory authorization for such. We agree.

"Where a statute or ordinance establishes a retirement plan for government employees, . . . the ordinance or statute becomes part of the contract of employment." *Swann v. Bd. of Trustees of Joint Municipal Employees' Benefit System*, 257 Ga. 450, 454 (2) (360 SE2d 395) (1987). In the instant case, Evans' right to have his legislative service credited to his ERS account thus depends upon the language of the applicable statutes in effect at the time of Evans' service.

As noted above, when Evans was first elected to the General Assembly in 1974, although the LRS still existed in a dormant state, he was required to participate as a member of the ERS pursuant to OCGA § 47-6-41. However, in 1979, the General Assembly began measures to separate the two retirement systems, requiring General Assembly members to choose between continuing under the ERS, withdrawing from the ERS and enrolling in the newly revived LRS, or not participating in either retirement system.

When Evans made his election on November 30, 1980, to change from the ERS to the LRS, his decision was not made without benefit to him. At that time, he received the benefit of a faster vested retirement, by virtue of the fact that retirement benefits vested under the LRS with only eight years of service (OCGA § 47-6-80), compared to the requirement of ten years of service under the ERS (OCGA § 47-2-110). As an elected official, Evans had no guarantee that he would be re-elected to office so that he could meet the ten-year vesting requirement of the ERS. By his retirement plan election, Evans received the benefit of having his retirement benefits vest in 1983, two years earlier than they would have vested had he elected to remain in the ERS. See Ga. L. 1979, pp. 931, 932. Evans was free to remain in the ERS until 1985, but chose, for a benefit, to become a member of the LRS, and to give up his right to participate in the ERS during his years of legislative service. OCGA § 47-6-42 (a).

OCGA § 47-6-42 (d), stating that General Assembly members

who elected to join the LRS "shall not thereby forfeit any rights or privileges possessed" under the ERS, provides no basis for allowing Evans to avoid the consequences of his election or to transfer years of legislative service back into the ERS when he resigned from the General Assembly. In all interpretations of statutes, the courts are to look diligently for the intention of the General Assembly, and to give words their ordinary signification. OCGA § 1-3-1; *City of Roswell v. City of Atlanta*, 261 Ga. 657 (410 SE2d 28) (1991). "[O]ne proper criterion for determining the meaning of a legislative enactment is to consider the general scheme and purport of the proposed legislation." *Pennington & Evans v. Douglas, Augusta &c. R. Co.*, 3 Ga. App. 665, 678 (60 SE 485) (1908).

Although both the ERS and the LRS were created for the purpose of providing retirement allowances and other benefits to its respective members, it is clear that the extent of those intended benefits was quite different. The ERS, which defines "member" as an employee whose employment is his primary occupation and involves working at least thirty hours per week and nine months of a year (OCGA § 47-2-1 (23)), was intended to provide an opportunity to establish a full retirement income for its members. Considering the fact that legislators work part-time and presumably do not depend upon a legislator's salary for a living, and considering the relatively modest retirement allowances under the LRS, it is apparent that the LRS was intended to provide only a supplemental source of retirement income to members with the requisite years of legislative service.

When the General Assembly took measures in 1979 and 1980 to separate the two retirement systems by requiring General Assembly members to choose between the ERS and the LRS, it surely could not have intended that legislators who elected to join the LRS nevertheless retained a right to re-establish their legislative service under the ERS upon their departure from the General Assembly. Such a result would be completely inconsistent with requiring an election in the first place. It also would allow enhancement of a supplemental retirement benefit that otherwise would be due under the LRS for part-time legislative service, by subsequently obtaining employment in a position covered under the ERS, a result that would be contrary to the apparent purpose behind the LRS of providing a supplemental retirement income.

Specifically, in the instant case, allowing such a transfer would result in crediting Evans with ten years of full-time service towards his retirement for part-time work. The General Assembly is charged with the duty of enacting laws that are in the best interest of the citizenry and are "necessary and proper for the welfare of the state," Ga. Const. 1983, Art. III, Sec. VI, Par. I, and the laws enacted by the General Assembly should be so construed. Construction of the retire-

ment laws in question so as to allow the subject transfer would not promote the welfare of the state and only where the statutes expressly provide for such transfers of service and allow no other construction, can they be so construed.

In contending that the retirement statutes did contain express provision for such transfers of service, Evans misplaces his reliance upon a partial transcript of a floor debate in the Georgia House of Representatives concerning the proposed 1985 amendment to the ERS Act, in which Representative Ruldolph Johnson, who sponsored the amendment and who would later become the executive director of the ERS and LRS, stated that although the proposed bill prohibited transfer of legislative service to the ERS after January 1, 1986, prior legislative service would remain creditable under the ERS. This portion of the floor debate cannot be accepted as a comprehensive manifestation of the General Assembly's interpretation of the prior enactments.

" 'In construing statutes subsequent acts of the legislature on the same subject may be considered.' [Cit.] The courts are to be guided by the last expression of the General Assembly on a subject." *Bd. of Trustees of the Policemen's Pension Fund of Atlanta v. Christy,* 246 Ga. 553, 555 (272 SE2d 288) (1980). In this regard, we note that in 1981, the General Assembly passed a bill that would have amended the law to permit the transfer of service sought by Evans, Ga. L. 1981, pp. 1938, 1941, which was vetoed by the governor. If the 1980 amendment had preserved the right to transfer legislative service back from the LRS to the ERS upon the termination of one's legislative service as argued by Evans, there would have been no need whatsoever for the vetoed 1981 statute that specifically authorized such transfers.

Whatever rights and privileges Evans retained under the ERS when he elected in 1980 to participate in the LRS, they did not include the right to re-establish his prior legislative service towards a retirement allowance under the ERS, as no such right existed in the ERS statute as of the date of that election. Disallowance of Evans' attempted re-establishment of his legislative service as creditable service under the ERS merely prevents the enhancement of his retirement benefits, and does not result in any forfeiture within the meaning of OCGA § 47-6-42 (d). Where a benefit is simply not allowed to be enhanced, it cannot be said that such disallowance constitutes a forfeiture of a benefit, as the benefit has the same value as it had at the pre-enhancement point.

We also disagree with the trial court's conclusion that the ERS had implicit authority to transfer accounts from the LRS back into the ERS. An administrative body created by the legislature "has only such powers as the legislature has expressly, or by *necessary* implication, conferred upon it." (Emphasis supplied.) *Bentley v. State Bd. of*

*Med. Examiners of Ga.*, 152 Ga. 836, 838 (111 SE 379) (1922). The ERS statute contains no express authorization for such transfers from the LRS to the ERS after a LRS member leaves the General Assembly and rejoins the ERS as a requirement of subsequent employment. OCGA § 47-6-42 (e), relied upon to some extent by the trial court, expressly authorized only transfers of LRS accounts to the ERS to effectuate the 1971 merger of the two retirement systems, but it does not bestow upon the ERS the express authority to make future transfers of LRS accounts back into the ERS and contains nothing which authorizes an implied authority to do so, especially in view of the fact that at the time it was enacted, the intent of the General Assembly was to divorce the two systems and discontinue the acceptance of part-time legislative service as creditable service under the ERS.

In summary, when Evans *elected* to join the LRS on November 30, 1980, pursuant to OCGA § 47-6-42 (a), he was bound by that choice, and the years of his legislative service may be credited only under the LRS. Although he was not obligated to remain in the LRS upon leaving the General Assembly because the election was irrevocable only as long as he was a member of the General Assembly, neither the ERS statute nor the LRS statute allows re-establishment of legislative service, previously credited under the LRS pursuant to his election in 1980 to withdraw from the ERS and join the LRS, as creditable service under the ERS. To hold otherwise yields a result that is contrary to the intendment of the respective retirement systems, and one that is especially inconsistent with the legislative intent to disallow crediting of such part-time legislative service under the ERS, as manifested by the amendments to the LRS statute beginning in 1979.

Accordingly, we conclude that the trial court erred in granting summary judgment for Evans on the grounds that Evans was statutorily entitled to have his legislative service credited under the ERS following his resignation from the General Assembly, which ruling was made despite his election in 1980 to withdraw from the ERS and join the LRS. Further, ERS would be entitled to judgment on its cross-motion for summary judgment, if no other issues remained in the case. However, in granting summary judgment for Evans, the trial court noted but found it unnecessary to address three other bases for summary judgment asserted by Evans, i.e., estoppel, re-establishment of service credit under OCGA § 47-2-92, and the constitutionality of the 1980 statute. Accordingly, this case must be remanded for determination of those remaining issues.

*Judgment reversed and case remanded. Cooper and Smith, JJ., concur. McMurray, P. J., and Johnson, J., disqualified.*

Decided December 1, 1993 —
Reconsideration denied December 17, 1993 — 

Michael J. Bowers, Attorney General, Jeffrey L. Milsteen, Senior Assistant Attorney General, Susan L. Rutherford, Assistant Attorney General, for appellant.

Chilivis & Grindler, Nickolas P. Chilivis, John K. Larkins, Jr., for appellee.

G. Stephen Parker, Joshua R. Kenyon, amici curiae.