S94G0520. EVANS v. EMPLOYEES' RETIREMENT SYSTEM
OF GEORGIA.
(450 SE2d 195)

BENHAM, Presiding Justice.

Warren Evans retired from state employment in 1991, after sixteen years, one month of service, ten years, nine months of which were served as a member of the General Assembly, and five years, three months as Commissioner of Insurance. At the time of his retirement,[1] Evans was a member of the Employees' Retirement System (ERS), which calculated his gross monthly pension payment based on sixteen years, one month of service, and paid the first monthly installment in March 1991.

Later that month, the Attorney General of Georgia issued an official opinion advising the chairman of ERS that OCGA § 47-6-42 did not authorize former legislators who later assumed positions entitling them to membership in ERS to transfer to ERS credit built up while they were members of the Legislative Retirement System (LRS). Based on that opinion from the Attorney General, ERS informed Evans that his ERS retirement benefits were being cancelled because he did not have the required ten years' service under ERS, and that he was indebted to ERS for the money paid to him in error. Evans instituted this action for specific performance, seeking to recover al-

---

[1] Evans retired after he was defeated in his effort to succeed himself as Commissioner of Insurance in the 1990 general election.

leged past-due retirement benefits and a resumption of payment of retirement benefits.[2] The trial court granted summary judgment to Evans and the Court of Appeals reversed. *Employees Retirement System of Ga. v. Evans*, 211 Ga. App. 448 (439 SE2d 690) (1993). We granted certiorari.

For the first five years and ten months of his legislative career (January 1975-November 1980), Evans was required by statute to be a member of ERS. OCGA §§ 47-2-160 (b); 47-6-41 (b). During its 1979 session, the General Assembly enacted legislation requiring every then-current member of the General Assembly to make an election about his/her retirement system membership: withdraw from ERS membership and join LRS; remain with ERS; or elect not to be a member of either system. Ga. L. 1979, p. 931, § 3 (codified at OCGA § 47-6-42 (a)). The election was to be made by a specified date and was irrevocable as long as the elector was a member of the General Assembly. Id. In 1980, the General Assembly amended the 1979 legislation to extend the time within which legislators had to decide about retirement coverage (Ga. L. 1980, p. 611, § 7) and, more pertinent to this case, to provide that any legislator electing to join LRS pursuant to the 1979 legislation

> shall not forfeit any rights or privileges possessed by such member under the [ERS] at the time such election is made, and such rights and privileges shall continue to apply to such member.

Ga. L. 1980, p. 611, § 8 (codified at OCGA § 47-6-42 (d)). After passage of the latter amendment, Evans elected to become a member of LRS and remained a member of that system until October 1985, when he accepted a gubernatorial appointment to the Office of Insurance Commissioner. Upon taking that office, Evans was statutorily required to become a member of ERS, and maintained active membership therein until his retirement in January 1991.

Each change of Evans' retirement system membership was accompanied by an administrative transfer of the assets and contributions contained in Evans' retirement "account." As a result, Evans' pre-election ERS service and contributions were transferred to LRS upon Evans' 1980 decision to join that system, and his LRS service and contributions were transferred to ERS upon Evans' appointment to the executive branch. Thus, at the time of Evans' retirement in 1991, ERS calculated and paid his gross monthly pension payment based on the combination of all his legislative and executive branch

---

[2] Whether ERS is estopped to deny benefits to Evans was not addressed by the trial court or the Court of Appeals, and is not an issue before this court.

service.

1. A statute that establishes a retirement plan for government employees becomes a part of the employee's contract of employment if the employee contributes any amount toward the benefits to be received and performs services while the statute is in effect. *Parrish v. Emp. Retirement System of Ga.,* 260 Ga. 613 (1) (398 SE2d 353) (1990); *Withers v. Register,* 246 Ga. 158 (1) (269 SE2d 431) (1980). It is undisputed that Evans made contributions to both ERS and LRS and performed services while a member of each retirement system. The controversy centers on the effect Evans' peripatetic membership in the two systems has on the retirement terms of his contract of employment. Therefore, we must turn to the statutory terms of that contract, keeping in mind the general rule that "the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction. . . ." *Board of Trustees v. Christy,* 246 Ga. 553 (1) (272 SE2d 288) (1980).

2. When Evans elected to join LRS, the 1980 amendment to OCGA § 47-6-42 provided that each legislator who elected to join LRS pursuant to the election required by Ga. L. 1979, p. 913, § 3, would not forfeit "any rights or privileges possessed by such member under the Employees' Retirement System of Georgia at the time such election is made; and such rights and privileges shall continue to apply to such member." OCGA § 47-6-42 (d). In essence, OCGA § 47-6-42 (d) provided that Evans made his election to join LRS without forfeiting any rights or privileges he possessed under ERS *at that time.* At that time, Evans had the vested right under the statutory terms of his employment contract to use his legislative service while a member of ERS for the calculation of retirement benefits from ERS. OCGA § 47-2-160 (b). Therefore, when Evans applied for retirement benefits from ERS in 1990, OCGA § 47-6-42 (d) authorized ERS to credit Evans with the five years and ten months of legislative service Evans gave while a member of ERS.

OCGA § 47-6-42 (a) dovetails with the plain and unequivocal language of § 47-6-42 (d). The legislature's determination that a legislator's election of retirement system was irrevocable "so long as [he was] a member of the General Assembly" is a statutory recognition that a legislator could, after leaving the General Assembly, take a position in state government that required membership in ERS. Should that occur, subsection (d) authorized the former legislator to use the legislative service he gave as a member of ERS in support of retirement benefits from ERS. Were the legislator's 1980 election unconditionally irrevocable, the elector would be unable to rejoin ERS upon employment in a position covered by ERS. Without a doubt, the passage of § 47-6-42 (d) made the employment contract more valuable to Evans and other legislators faced with making a choice about retire-

ment system membership. However, that does not make the contract illegal or unenforceable. Cf. *Swann v. Bd. of Trustees &c.*, 257 Ga. 450, 453 (360 SE2d 395) (1987).

3. While Evans was entitled under §§ 47-6-42 (d) and 47-2-160 (b) to have his legislative service while an ERS member credited toward the receipt of retirement benefits from ERS, no statutory provision authorized the use of his legislative service while a member of LRS toward receipt of retirement benefits from ERS. OCGA § 47-6-42 (d) is of no avail to Evans because, when he joined LRS he did not possess a right or privilege as a member of ERS to join another retirement system and have service performed pursuant to the new retirement contract credited toward retirement benefits from the first retirement system. As there is no statutory authorization that permits Evans to use legislative time served while a member of LRS toward retirement benefits under ERS, the Court of Appeals was correct in reversing the trial court on this issue.

In summary, we conclude that Evans was entitled to credit toward retirement under ERS that portion of his legislative career during which he was a member of ERS and the time he spent in the executive branch as a member of ERS as Commissioner of Insurance.

*Judgment reversed. Hunt, C. J., Benham, P. J., Sears, Hunstein, Carley, Thompson, JJ., and Judge William T. Boyett concur; Fletcher, J., not participating.*

DECIDED NOVEMBER 7, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*Chilivis & Grindler, Nickolas P. Chilivis, John K. Larkins, Jr.,* for appellant.
*Michael J. Bowers, Attorney General, Susan L. Rutherford, Jeffrey L. Milsteen, Senior Assistant Attorneys General,* for appellee.