A95A2255. THE STATE v. HUDGINS.
(469 SE2d 363)

POPE, Presiding Judge.

The State brought this conversion action against defendant Floyd Hudgins, seeking to recover $9,768.30 which the State accidentally paid Hudgins when his name was not removed from the State payroll due to an administrative error. The trial court granted summary judgment for Hudgins, concluding that Hudgins' employment was never effectively terminated because the State failed to follow the procedures required for terminating an employee entitled to coverage under the involuntary separation retirement benefits provisions of OCGA § 47-2-123. The State argues that a material question of fact remains regarding whether Hudgins knew or should have known that his conduct would lead to his dismissal, and thus whether his dismissal was truly "involuntary." While this question may be material to the issue of Hudgins' right to actually collect involuntary separation benefits, it is not material to the State's need to follow the procedures set forth in OCGA § 47-2-123. Accordingly, we affirm the trial court's grant of summary judgment for Hudgins.

We view the facts in a light most favorable to the State as the non-moving party on a motion for summary judgment. Hudgins was a longtime member of the General Assembly. After he lost his bid for re-election in 1988, he used his connections with Governor Joe Frank Harris's office to secure employment with the Department of Natural Resources ("DNR"). Rather than being placed in an already existing job, the Governor gave Hudgins a specific project in line with his area of expertise — to develop a pilot program for a Youth Conservation Corps ("YCC") in Georgia. The parties agreed at the time of Hudgins'

employment that his position would continue only as long as the General Assembly appropriated funds for the YCC. Hudgins secured funding for 1989 and submitted a proposal by the end of that year. His proposal was not endorsed by the Governor or accepted by the General Assembly, however, and funding was cut off in the 1990 legislative session.

Although it was the understanding of the Governor's office that Hudgins' employment would automatically cease on June 30, 1990, no one took the necessary steps to take Hudgins off the payroll. He therefore remained on the payroll until Joe Tanner, the new Commissioner of the DNR, noticed and questioned his salary in late 1990. Tanner then notified Hudgins that his continued receipt of paychecks had been a mistake and asked Hudgins to return the money, but Hudgins refused.

A State employee who is entitled to coverage under the involuntary separation retirement benefits provisions of OCGA § 47-2-123 cannot be released from employment unless the State employer follows specified procedures, and any attempt by the State to terminate the employment of such an employee without following those procedures is ineffective. See OCGA § 47-2-123 (g) & (h). It is undisputed that the State in this case did not follow the specified procedures. Thus, if Hudgins was an employee entitled to coverage under the involuntary separation retirement provisions of OCGA § 47-2-123, his employment was never effectively terminated and the grant of summary judgment was proper.

Hudgins first became a member of the Employees' Retirement System ("ERS") in May 1971, when he was a legislator; and he remained a member until January 1981, at which point he became a member of the Legislative Retirement System. Hudgins then became an ERS member again in December 1988, when he took the YCC position offered through the Governor's office, and he stayed an ERS member through June 1990. It is now clear (although it was not clear when this litigation began) that Hudgins is entitled to ERS credit for that portion of his legislative career during which he was an ERS member. See *Evans v. Employees' Retirement System &c.*, 264 Ga. 729 (450 SE2d 195) (1994). Accordingly, at the time Hudgins was purportedly terminated in June 1990, he had been an ERS member for more than ten years (see OCGA § 47-2-122), he had first become a member prior to March 31, 1972 (see OCGA § 47-2-123 (a)), and he had reached the age of sixty (see OCGA § 47-2-123 (c)). Hudgins was therefore entitled to coverage under the involuntary separation retirement benefits provisions of OCGA § 47-2-123, and the procedures set forth in OCGA § 47-2-123 (h) should have been utilized.

Citing *Haggins v. Employees' Retirement System &c.*, 255 Ga. 352, 354 (2) (338 SE2d 1) (1986) and *Dept. of Public Safety v. Willis,*

218 Ga. App. 541 (462 SE2d 386) (1995), the State argues that Hudgins is not entitled to involuntary separation retirement benefits unless his discharge was truly "involuntary." In *Haggins,* the Supreme Court held that an employee who intentionally causes his own dismissal, or engages in conduct he knows or should know will lead to his dismissal, is not involuntarily separated for purposes of collecting involuntary separation retirement benefits. 255 Ga. at 354 (2). And whether or not a particular discharge was truly "involuntary" is a jury question. Id. at (1) and (2).

A distinction must be made, however, between an "employee who is entitled to coverage under the involuntary separation retirement benefits provisions of this Code section" as a general matter, OCGA § 47-2-123 (g), and an employee who is actually entitled to receive involuntary separation benefits under the specific circumstances of his particular case. Otherwise, an employer deciding whether the procedures of OCGA § 47-2-123 must be used would have to play the jury's role and make a fact-specific determination about whether the employee's dismissal is in fact "involuntary" before taking a course of action. This is not the proper approach. Instead, if the objective criteria for coverage under the involuntary separation retirement benefits provisions of OCGA § 47-2-123 are met as a general matter, the procedures set forth in OCGA § 47-2-123 (h) must be utilized, even if a jury may later determine that the employee is not entitled to such benefits under the specific circumstances of the case.

*Judgment affirmed. Beasley, C. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 16, 1996 —
RECONSIDERATION DENIED MARCH 11, 1996.

*Michael J. Bowers, Attorney General, Harrison W. Kohler, Jeff L. Milsteen, Senior Assistant Attorneys General,* for appellant.

*Worthington & Flournoy, Samuel W. Worthington III,* for appellee.

